# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No.99-4258

_____

| | | |
|---|---|---|
| Janice E. Palesch, | * | |
| | * | Appeal from the United States |
| Appellant, | * | District Court for the Eastern |
| | * | District of Missouri |
| | * | |
| vs. | * | |
| | * | |
| Missouri Commission on | * | |
| Human Rights, et al., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 15, 2000
Filed: November 21, 2000

_____

Before RICHARD S. ARNOLD, Circuit Judge, BATTEY,[1] and MOODY,[2] District

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, sitting by designation.

Judges.[3]

_____

MOODY, District Judge.


Plaintiff Janice E. Palesch appeals from the District Court's[4] entry of summary judgment as to her claims of: (1) race and sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (2) retaliation in violation of Title VII; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201 et seq.; and (4) conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985(3). Plaintiff's ADA and Title VII claims were filed against her employer, the Missouri Commission on Human Rights ("the Commission") and the Department of Labor and Industrial Relations ("DLIR")." Plaintiff's conspiracy claim named several individual defendant employees of the Commission. In addition to appealing the District Court's grant of summary judgment, Palesch also appeals the District Court's denial of her motion to stay her claim of disability discrimination. We affirm.

## Background

The District Court's well-written twenty page opinion describes in considerable detail the factual background of this case. Palesch, a white female, began her employment with the Missouri Human Rights Commission in 1992 as a Human Rights

---

[3]Pursuant to 28 U.S.C. Sec. 46(b), the Chief Judge certified the existence of a judicial emergency necessitating the designation of a panel consisting of fewer than two members of the Court of Appeals.

[4]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri, Eastern Division.

Officer. Her duties entailed investigating filed charges and making preliminary recommendations as to whether or not there was probable cause for proceeding with a claim. Palesch claimed that her employer discriminated against her based on race, gender and disability.

In addition to the state agency defendants, Palesch also sued six state employees, alleging they conspired to violate her civil rights. The relationship of these employees to the Commission is as follows: Steve Skolnick is Deputy Director/Legal Counsel of the Commission. Alvin Plummer was Executive Director of the Commission from 1981 until June of 1997. Eric Krekel is Director of Operations. Sheryl Rose is a Regional Manager who reports directly to Krekel. Frank Montgomery is a unit supervisor who reports to Rose. Ernestine Gage is a personnel officer.

Plummer, Krekel and Rose participated in the decision to hire Palesch. Montgomery was her immediate supervisor. From the date of her hire through her performance appraisal in July of 1996, Palesch's performance ratings ranged from "Successful" to "Outstanding." During this period, Montgomery had only minor complaints about Palesch's work and generally considered her an excellent employee.

In May of 1996, problems began to develop between Palesch and other employees of the Commission. On May 21, 1996, Palesch submitted a memo to Plummer, as Executive Director, complaining about a change in policy relating to reduction of compensatory time and about conduct of two co-workers, Sheila Williams and Fred Hatley. Palesch contended that Williams, a black woman, had threatened her with bodily harm and had damaged her automobile in January of 1995. Palesch also voluntarily disclosed for the first time that she had been diagnosed with "severe depression" for which she was receiving medication. Palesch did not claim that the treatment she complained of occurred because of her gender or race.

On May 25, 1996, Palesch left work early and did not come in on the following

day because she felt depressed. When she returned to work on the following Monday, she spoke with co-worker Vanessa Foster and made the statement: "Well, I'll tell you what. If I had come in on Friday, I could have shot somebody." Foster was unsure if the statement was made in jest or not.

On May 29, 1996, Palesch was interviewed by Montgomery and Rose about her statement to Foster. Palesch admitted making the statement but said it was meant as a joke. Effective June 4, 1996, Palesch was put on administrative leave with pay pending receipt of medical information from her physician concerning how her condition impacted her ability to work. The memorandum documenting her leave specifically mentioned as a reason for the paid leave Palesch's threatening statements to and complaints about her co-workers.

Palesch's physician, Dr. Carol Robinson, supplied the requested information in a memorandum dated June 5, 1996. In the memorandum, Robinson stated that she had been treating Palesch for depression since 1995, that Palesch was about to start counseling, and that, in her view, Palesch was not a threat to any co-worker.

Meanwhile, the Commission had been investigating the charges raised by Palesch in her May 21, 1996, memorandum in which she complained about her co-workers. On June 13, 1996, Rose and Montgomery documented the investigation in a memorandum and concluded that Palesch's claims about her co-workers could not be verified. Some of the incidents about which Palesch complained occurred in late 1994 and early 1995 and her delay in reporting her complaints to management made Palesch's allegations more difficult to investigate.

On June 14, 1996, Palesch filed her first charge of discrimination with the EEOC against the defendants. She alleged discrimination based on race, sex and disability.

On June 17, 1996, Montgomery authorized Palesch to work from her home until

additional medical information could be obtained from Dr. Robinson and counselor Teresa Wojak. Montgomery specifically inquired of Dr. Robinson and Wojak if Palesch needed special accommodations to return to work. In response, Montgomery received a letter from Wojak and Dr. David Ohlms, a psychiatrist, stating that Palesch "posed no threat."

Palesch returned to work in the office on July 16, 1996, and was moved to an office of her choosing. She was also given credit for cases completed due to her administrative leave status and was recognized as "investigator of the quarter" by Montgomery.

Plummer resigned as Director of the Commission in June of 1997. At that time, Palesch's Performance Appraisal indicated that she needed improvement because of a production deficiency. During a production quarter, Human Resource Officers were required to complete a minimum of fifteen cases and a minimum of sixty cases within a year. If production fell below twenty percent of the minimum, the officer could be placed on an Action Plan.

At the end of the production year for 1996, Palesch was fifteen cases short of the minimum and was placed on an Action Plan from June to September, 1997. She did not meet the requirements of the first plan and was placed on another plan.

On November 4, 1997, Palesch filed a second charge with the EEOC alleging retaliation. At this point, Skolnick directed Palesch to be examined by Dr. Robert Packman, an independent psychiatrist, to determine if she could perform the essential functions of her job. Dr. Packman examined Palesch in December of 1997 and recommended that she be placed on medical leave because of the stress she was experiencing. Dr. Packman's report noted Palesch's refusal to provide medical information which restricted his ability to render a complete assessment of her ability to perform.

On December 29, 1997, Skolnick put Palesch on involuntary leave with pay and instructed her to make arrangements with her treating physician to get the information requested by Dr. Packman. On January 22, 1998, Krekel recommended to Skolnick that Palesch be discharged for failing to furnish medical releases to her physician to provide medical records to Dr. Packman. This recommendation was forwarded to Gage as the personnel officer with oversight responsibility in matters of employee discipline and terminations.

After receiving notice of the termination, Palesch responded by stating that she had never received the letters requesting that she release the information and she then submitted two properly executed release forms. Upon receipt of the forms, Palesch's termination was suspended.

After Dr. Packman received the additional medical records from Olhm, Robinson and Wojak, he issued a report opining that Palesch could not perform the essential functions of her job and that she posed a threat to herself and others in the workplace. On August 28, 1998, Palesch was notified of her dismissal. The reasons stated in the letter for the dismissal were Palesch's inability to perform the essential functions of her job and that her continued employment posed a direct threat to the health and safety of herself and others.

Discussion

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d

-6-

664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076 (8th Cir. 1980).  The nonmoving party may not merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial.  Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981).

Palesch couched her Title VII race and sex discrimination claims in the form of hostile work environment, discriminatory treatment, and retaliation allegations.  She contends that, because of her gender and race, she was subjected to workplace harassment; that she was treated differently from similarly situated employees; that she was unlawfully discharged; and, that she suffered unlawful retaliation.  Each of these claims will be treated  separately.

**Hostile Work Environment**

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII's protections extend beyond "'terms' and 'conditions in the narrow contractual sense."  Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed. 2d 662 (1998)(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed. 2d 201 (1998))(internal quotation omitted).  Title VII has been interpreted as reflecting Congress' intent to define discrimination in broad terms without enumerating specific discriminatory practices or specifically identifying all prohibited conduct and activities.  See Hall v. Gus Constr. Co., 842 F.2d 1010, 1014 (8th Cir. 1988).

-7-

Harassment of an employee based on a prohibited factor (e.g., gender, race, religion) is prohibited conduct under Title VII. Hostile work environment harassment occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S., 17, 21, 114 S.Ct. 367, 126 L. Ed. 2d 295 (1993) (citations omitted). To prevail on her hostile work environment claim, Palesch must present evidence that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the existence of a causal nexus between the harassment and her protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action.[5] The complained of conduct must have been severe or pervasive enough to create an objectively hostile work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

We agree with the District Court that Palesch failed to present any competent evidence to link the complained of conduct to a race or gender-based animus. We further find that the evidence presented by Palesch failed to demonstrate, under the totality of the circumstances, that the harassing conduct was "so severe or pervasive that it create[d] an abusive working environment." Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992)(citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Palesch's contentions do not rise to the level of sustained harassment that we have previously found to be a proper foundation for the successful pursuit of a hostile environment claim. See id. at 560-62. Moreover, the required causal nexus between the complained of harassment and the protected status of Palesch (gender and race) is conspicuously absent in this case.

---

[5]This final element applies to allegations of non-supervisory harassment, but not to allegations of supervisory harassment. See Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). Thus, to the extent Palesch claims harassment by her supervisors, she need not prove her employer knew or should have known of the harassment.

Palesch contends that her supervisor became biased against her when she wrote a memo complaining about the conduct of two co-workers. One of the co-workers was black and the other was a male. Palesch further complains that her co-workers and supervisors frequently ignored her, that she was isolated from office social activities, and that co-worker Sheila Williams damaged her car, shoved her against a wall, and threatened her with bodily harm. Palesch failed to provide anything more than bare allegations that her co-workers harassed her because of her race or gender. Further, Palesch admitted to non-discriminatory explanations for her co-workers' behavior during her own deposition, numerous examples of which are outlined in the District Court's opinion.[6]

Palesch waited over a year to report the alleged offensive conduct, which no doubt caused difficulty in investigating her claims. To the extent Palesch complained to her superiors about how she was treated, the Commission promptly and reasonably investigated her allegations. The Commission could not verify her complaints.

In addition to producing insufficient evidence to create a jury question on whether her co-workers subjected her to unlawful harassment, Palesch also failed to produce evidence sufficient to create a fact question as to whether her supervisors

---

[6]

For example, Palesch testified that Ms. Williams disliked her because Palesch befriended another employee whom Ms. Williams disliked. Palesch further testified that co-worker Vanesa Foster's close friendship with Ms. Williams was responsible for Ms. Foster's conduct toward Palesch. In response to being asked why she thought she was ignored by her co-workers and supervisors, Palesch opined that when the "'[p]owers that be' wouldn't speak to me, I guess they [the co-workers] thought it was perfectly all right to act out and just simply do the same." When asked for any evidence to substantiate her opinion, Palesch admitted that it was pure speculation on her part. Plaintiff opined that co-worker Fred Hatley disliked her because she volunteered to help him with his work and then reported to a supervisor that Mr. Hatley's work was incomplete.

created a hostile environment. Palesch complains that her supervisors harassed her by placing her on leave with pay and by requiring an independent psychiatric exam. Under all the circumstances, it was reasonable to put Palesch on paid leave until the extent of her medical condition and ability to work could be determined by her physicians. The Commission could not afford to ignore Palesch's admitted statement regarding shooting someone at work, particularly in light of other factors which indicated that Palesch was not mentally stable. Palesch wrote a series of memorandums in which she complained of co-workers not speaking to her, rolling their eyes at her, and general office indignities, although she never alleged any racial or gender motivated conduct associated with these complaints. Palesch herself noted her concern over a "further deepening" of her depression. The Commission's response was reasonable and this Court will not second-guess it, particularly in the complete absence of any evidence that the Commission was motivated by Palesch's gender or race.

The actions complained of by Palesch, even when viewed in a light most favorable to her, appear to be nothing more than an effort to impose a code of workplace civility. The complained of conduct simply does not rise to the level of hostile work environment prohibited by Title VII.

While it appears that Palesch had personality conflicts with numerous co-workers, this is insufficient to satisfy the threshold level of evidence to go forward with her case. "Not all unpleasant conduct creates a hostile work environment. Rather the plaintiff must show that she was singled out because of her gender [or race], and that the conduct was severe and pervasive." William v. City of Kansas City, Missouri, 223 F.3d 749, 753 (8th Cir. 2000). Palesch offers little more than speculation and conjecture to make the required connection from the mistreatment she alleges to a gender or race-based animus. Palesch has failed to create a material issue of fact concerning whether she was subjected to workplace harassment because of either her race or gender. See Kneibert v. Thompson Newspapers, Mich., Inc., 129 F.3d 444,

455 (8th Cir. 1997)(party opposing summary judgment must provide sufficient probative evidence to permit a verdict in its favor rather than relying on conjecture and speculation).

The District Court correctly analyzed the evidence and properly viewed it as a whole in concluding that there was no causal connection between the behavior of Palesch's co-workers, Paslesch's supervisors and prohibited workplace harassment.

**Disparate Treatment**

Title VII prohibits employers from discharging an employee because of race or gender and from treating employees differently with respect to the "terms, conditions, or privileges" of employment. See 42 U.S.C. § 2000e-2(a)(1).

Palesch charges management overreacted to her statement about shooting someone and disciplined her unfairly until she produced a doctor's statement. Palesch, when allowed to return to work, was then allegedly discriminated against by being placed on Action Plans even though her performance was consistently rated "successful." Further, she alleges that she was unlawfully terminated because of her race and gender.

A plaintiff may prove allegations of disparate treatment by demonstrating that she was treated less favorably than similarly situated employees outside the plaintiff's protected class. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-60 (8th Cir. 1996); Johnson v. Legal Servs. of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir. 1987). The test for whether employees are "similarly situated" to warrant a comparison to a plaintiff is a "rigorous" one. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994). For discriminatory discipline claims, "[e]mployees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.'" Id. (citations omitted).

-11-

Palesch alleged that she was treated differently from five similarly situated employees. The District Court examined in detail Palesch's allegations of differential treatment and found "substantial dissimilarities" between Palesch's situation and those of the alleged similarly situated employees. The District Court correctly found that Palesch failed to produce "specific, tangible evidence" to demonstrate a disparity in treatment between similarly situated employees. See Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109 n. 4 (8th Cir. 1998). Summary judgment was properly granted as to Palesch's claim of disparate treatment prior to her termination.

Under all the circumstances, it was reasonable to put Palesch on paid leave until the extent of her disability from depression could be determined by the physicians. The Commission could not afford to ignore Palesch's admitted statement regarding shooting someone at work. Palesch contends she meant the statement as a joke. Assuming she did, the seriousness of the statement made was more than adequate justification for her employer's response, particularly in view of recent experience nationally with violence in the workplace.

Palesch further contends that the solicitation of Dr. Packman's opinion that she was not able to perform the essential functions of her job was a pretext for her termination. Palesch's own lack of cooperation and the Commission's inability to get sufficient information from Palesch's treating physician made it necessary to solicit an opinion from a independent psychiatrist.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2111, 147 L.Ed.2d 105 (2000). There is insufficient evidence in this case to permit a finding of intentional discrimination with respect to any of the numerous theories espoused by Palesch. Accordingly, the District Court properly granted summary judgment as to each and every disparate treatment allegation made by Palesch.

**Discriminatory and Retaliatory Discharge**

Palesch contends that she was discharged because of her gender and race and in retaliation for filing EEOC charges against the Commission. Title VII prohibits an employer from discharging an employee because of his or her race or gender. 42 U.S.C. § 2000e-3(a). Title VII also prohibits employers from discriminating against or discharging an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The District Court assumed that Palesch established a prima facie case of discriminatory discharge. Under the familiar burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973), and its progeny, once a plaintiff has set forth a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id., 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d 668. If the employer does so, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-508, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993).

To support her retaliation claim, Palesch has the burden to show: (1) she engaged in statutorily protected participation; (2) her employer subsequently took an adverse employment action; and (3) the adverse action was causally linked to her protected activity. See Cross v. Cleaver, 142 F.3d 1059, 1071-72 (8th Cir. 1998); Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997).

Dr. Packman's final opinion, after he was finally provided with all of Palesch's medical records, provides a legitimate, non-discriminatory business reason for the

Commission's decision to terminate Palesch. Likewise, the Commission's contention, with supporting documentation, that Palesch failed to meet the performance requirements of the job by failing to complete the required number of cases for the 1996-97 production year provides an additional reason for Palesch's termination and also supports Dr. Packman's opinion that Palesch was unable to perform her job.

Palesch's effort to show that the Commission's asserted reasons for her discharge were pretextual fell short of creating a material issue of fact for the jury. Palesch attacked the length of Dr. Packman's interview with her, which was one hour and twenty minutes. Palesch also attempted to dispute his findings that she was unable to perform essential job functions and that she posed a threat to herself and others. These alleged factual disputes fell short of creating a material fact issue as to the issue of pretext.

The two explanations offered by the Commission for Palesch's termination combined with the lack of any real evidence that any adverse action taken toward Palesch was motivated by discriminatory animus entitled defendants to summary judgment.

As to Palesch's contention that she was terminated in retaliation for the charges she filed with the EEOC, the District Court found that she failed to produce any evidence of a causal connection between these two events other than her own unsubstantiated opinion testimony. We agree. Palesch's general allegations and opinion testimony will not suffice. See Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998)(holding plaintiff unable to establish prima facie case of retaliation where plaintiff's affidavit was devoid of any specific factual allegations that, if credited by a trial jury, could support a finding of a causal connection between alleged adverse actions and filing of complaint); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997)(holding conclusory statements in affidavit, standing

alone, are insufficient to withstand a properly supported motion for summary judgment).

We affirm the District Court's grant of summary judgment as to Palesch's discriminatory discharge and retaliatory discharge claims.

**ADA Claim**

Appellant claimed the state agency defendants discriminated against her on the basis of her depression in violation of the ADA. This claim is precluded by the Eighth Circuit's holding in Alsbrook v. City of Maumelle, 184 F.3d 999 (8th Cir. 1999) (en banc), petition for cert. granted in part, 120 S.Ct. 1003, and dismissed, 120 S.Ct. 1265 (2000). Alsbrook establishes the law in this Circuit that the Eleventh Amendment provides state employers with immunity from suit for ADA violations.[7]

**Conspiracy Claim**

The District Court ruled as a matter of law that Palesch was precluded from bringing a conspiracy claim based upon the Supreme Court's holding that a litigant may not bring a claim under § 1985(3) to redress violations of Title VII. Great American Fed. Savings & Loan Assoc. v. Novotny, 442 U.S. 366 (1979). Palesch contends the District Court erred because her conspiracy claims go beyond Title VII. Even assuming that Palesch's contentions of race and sex based class discrimination are broader than Title VII, her § 1985(3) claim still fails. Purposeful discrimination must be established for a party to succeed on a § 1985(3) claim. McIntosh v. Arkansas

---

[7]

Appellant did not challenge the effect of Alsbrook, but argued in her brief that the district court should have granted a stay to allow the United States Supreme Court, which at that time had granted a writ of certiorari, 120 S.Ct. 1003, to rule. Since then, the writ of certiorari has been dismissed by the Court, 120 S.Ct. 1265 (2000), and along with it, any basis for staying plaintiff's ADA claims.

Republican Party - Frank White Election Committee, 766 F.2d 337 (8th Cir. 1985).  As discussed above, Palesch has failed to produce evidence to support a finding of purposeful discrimination.  Her own conclusory allegations that the individual defendants were out to get her because she was a white female will not suffice.  The District Court properly dismissed this claim.

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT