**Karen PEDA, Plaintiff,**

v.

**AMERICAN HOME PRODUCTS CORPORATION, Parent Corporation of Ft. Dodge Animal Health, Inc.; Ft. Dodge Laboratories, Inc.; Erik Haack; and Brent Strandridge, Defendants.**

**No. C01–3020–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

June 20, 2002.

Neil A. Barrick, Barrick Law Office, Des Moines, IA, for Plaintiff.

Deborah M. Tharnish, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................... 1009
 A. *Procedural Background* ............................................. 1010
 B. *Disputed And Undisputed Facts* ...................................... 1011

II. *DISCUSSION* ......................................................... 1012
 A. *Standards For Summary Judgment* ..................................... 1012
 1. *Requirements of Rule 56* ......................................... 1012
 2. *The parties' burdens* ........................................... 1013
 3. *Summary judgment in employment discrimination cases* ............. 1013
 B. *Peda's Sex Discrimination Claims* .................................... 1014
 1. *Analytical framework: The burden-shifting paradigm* .............. 1015
 2. *Peda's* prima facie *case* ....................................... 1016
 a. *Unwelcome sexual harassment* ................................. 1017
 b. *Based on sex* ................................................ 1019
 3. *Legitimate, nondiscriminatory reason* ........................... 1020
 C. *Standridge And Haack As Proper Defendants* .......................... 1021
 D. *Wage Payment Collection Claim* ...................................... 1021

III. *CONCLUSION* ....................................................... 1022

Because employment discrimination cases so often depend on inferences rather than on direct proof of discrimination, the Supreme Court has fashioned an order of proof and presumptions, and the Eighth Circuit Court of Appeals has cautioned against the use of summary judgment, in such cases. Still, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation omitted). In this case, the court is asked to determine whether the plaintiff's case is that *rara avis* among employment discrimination cases in which summary judgment is appropriate.

## I. INTRODUCTION

This matter is before the court on the defendants' motion for summary judgment. (Doc. No. 17). In this employment discrimination case, the plaintiff avers two causes of action. First, the plaintiff claims that she was discriminated against based on her sex and seeks redress pursuant to the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Iowa Civil Rights Act ("ICRA"), Iowa Code chapter 216. Second, the plaintiff asserts a claim under the Wage Payment Collection Law, Iowa Code chapter 91A, on the ground that she has been subjected to an underpayment of approximately $18,000 in lost commissions.

In their brief in support of their motion for summary judgment, the defendants principally addressed Ms. Karen Peda's ("Peda") claims of sexual discrimination by arguing that Peda could not establish a

*prima facie* case of discrimination based on disparate treatment. However, in her resistance, Peda maintained that she did not allege sex discrimination based on disparate treatment, but rather that "[t]his is a matter of a hostile work environment." [Pltf.'s Br., at 6]. And while the plaintiff nonetheless responded to the defendants' argument set forth in their brief regarding disparate treatment, the court deems Peda's statements as an acknowledgment that her complaint does not allege sex discrimination based on disparate treatment. Therefore, the court will not address this argument. Likewise, the defendants utilized their opportunity to file a reply brief to address Peda's hostile work environment sex discrimination claim.

In addition, the defendants (collectively referred to as "Fort Dodge Animal Health" or "FDAH") assert that even if Peda were able to establish a *prima facie* case of discrimination, she cannot overcome the defendants' proffered legitimate, nondiscriminatory reason for her termination—that Peda was indefinitely unable to work. The defendants also argue that, in any event, the plaintiff's sex discrimination claims asserted against her supervisors, Brent Strandridge and Erik Haack, in their individual capacities cannot stand. Thus, at issue on the plaintiff's claims of sex discrimination in this motion for summary judgment is whether the plaintiff has generated genuine issues of material fact with respect to her claim of sexual discrimination based on the creation of a hostile working environment.

In her resistance, Peda maintains that she indeed can establish a *prima facie* case of discrimination. She asserts that "factual disputes exist as to not only whether certain facts existed as claimed by Plaintiff and denied by Defendants concerning their actions, but also whether said actions constitute a hostile work environment." [Pltf.'s Br., at 7–8]. Further, she attempts to rebut the defendants' proffered legitimate, nondiscriminatory reason for her termination by arguing that the defendants cannot escape liability by proffering her leave as their legitimate nondiscriminatory reason when the defendants caused her inability to return to work. [Pltf.'s Br., at 9]. Peda also argues that her action against Standridge and Haack is proper and that they should not be dismissed from this litigation because "[q]uestions of fact exist for determination as to these defendants [sic] roles in the actions that led to plaintiff's disability and resulting termination form [sic] employment." [Pltf.'s Br., at 10].

Lastly, Peda contends that her cause of action under the Wage Payment Collection Law is timely, at least as it relates to her claim for wages two years prior to March 28, 2001—the date on which she filed her petition for relief in Iowa state court. In addition, she argues that, while she had knowledge of the underlying facts giving rise to her claim in late 1998, these suspicions do not suffice to preclude her claim for wages prior to March 28, 1999. That is so because, according to Peda, her commissions could have affected quarterly and/or year-end bonuses.

### A. Procedural Background

Peda filed this case on March 2, 2001. She amended her complaint on April 12, 2002 and averred three causes of action. First, she alleged sexual discrimination in violation of Title VII and the Iowa Civil Rights Act. Second, she alleged age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* and the Iowa Civil Rights Act. And last, she made a claim pursuant to the Iowa Wage Payment Collection Law. On May 1, 2002, however, the parties stipulated to the dismissal of Peda's age discrimination claims. (Doc. No. 24).

Thus, only Peda's sexual discrimination and wage claims remain at issue on this motion for summary judgment, which the defendants filed on April 17, 2002. (Doc. No. 17).

In this motion, Peda was represented by Neil Barrick of Barrick Law Firm, Des Moines, Iowa. The defendants were represented by Deborah Tharnish of Davis Brown Koehn Shors & Roberts, Des Moines, Iowa. A jury trial in this case is scheduled for August 19, 2002.

Subject matter jurisdiction over Peda's federal claim is proper pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e–5, which provides for original jurisdiction of claims under Title VII in the United States district courts. The court has jurisdiction over the state law claims alleging violations of the ICRA and the Wage Payment Collection Law under 28 U.S.C. § 1367(a), which confers "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

### B. Disputed And Undisputed Facts

Although the court will not attempt an exhaustive discussion of the disputed and undisputed facts presented by the record in this case, some discussion of the factual background is required to contextualize Peda's claims and the parties' arguments for and against summary judgment. Those facts include a brief synopsis of the nature of the defendants' business, Peda's employment with FDAH, and the circumstances surrounding Peda's termination from that employment.

Fort Dodge Animal Health sells and distributes veterinary pharmaceutical products. Peda began working for FDAH in June of 1996 as a companion animal pharmaceutical sales representative for the northern half of Iowa. As a territory manager, Peda reported to Erik Haack, the regional manager. Brent Standridge, another individual defendant named in this litigation, is Haack's superior and the senior vice president of sales and marketing for North America.

Peda's performance evaluations in both 1997 and 1998 were adequate, scoring a 70 out of a possible 100 points in the 1997 calendar year evaluation and a 69.5 in 1998. A score in the range of 60–69 points indicates a "marginal performance level," while a score in the range of 70–79 indicates a "good performance level." [Deft.'s App., at 26, 34]. Nevertheless, Peda received modest merit salary increases those years: 4.4% on January 1, 1998 and 4.23% on January 1, 1999. Peda's job performance problems included a failure to adequately push the sale of the drug Etogesic, which was a primary sales emphasis for FDAH. In fact, out of 79 full-time field territory representatives, Peda ranked 78th in the sale of Etogesic. In addition, wholly apart from her lackluster job performance, Peda had other problems at work. For instance, she had been reprimanded regarding inappropriate use of her company credit card. On October 7, 1999, Haack met with Peda to discuss these problems, and FDAH placed Peda on "Corrective Action."

As a territory manager, Peda's compensation package included a yearly salary and eligibility for commissions as well as a quarterly bonus if the entire company was meeting its quota and a year-end bonus if the company made its sales goal for the year. In the fall of 1998, Peda began to question the accuracy of FDAH sales and commissions reports. On March 9, 1999, Peda disputed her distributor sales calculation figures and the commissions she received for calendar year 1998. Peda

claims that her unresolved doubt about sales figures resulted in the deterioration of her relationship with Haack. Peda also claims that, as a result of this deterioration, she sought medical assistance for anxiety and depression in January of 1999.

Shortly after the October of 1999 meeting regarding Peda's inappropriate use of the company credit card, on November 1, 1999, FDAH granted Peda's request to be placed on family medical leave due to mental health problems. Peda's leave was extended three times, ultimately through February 28, 2000. FDAH denied Peda's fourth request for leave and asked her to return to work by February 28, 2000. FDAH terminated Peda in May of 2000 when she remained unable to return to work. She has not worked since her separation from FDAH, and her psychiatrist does not know whether Peda will ever be able to reenter the workforce.

## II. DISCUSSION

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part:

Rule 56. Summary Judgment

. . . . .

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed. R. Civ. P. . 56(a)-(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538(1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. *The parties' burdens*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint*

*(TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. *Summary judgment in employment discrimination cases*

■ Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) ("[S]ummary judgments should only be used sparingly in employment discrimination cases.") (citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); and *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where

there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir. 1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford,* 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

Nevertheless, the Eighth Circuit Court of Appeals also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134 (8th Cir.

1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. The court will apply these standards to the defendants' motion for summary judgment, addressing each of Peda's claims in turn.

### B. Peda's Sex Discrimination Claims

■ As a preliminary matter, it should be noted that in considering Peda's dis-

---

1. In *Reeves,* the Supreme Court was considering a motion for judgment as a matter of law after a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the

inquiry under each is the same.' " *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby, Inc.,* 477 U.S. at 250–51, 106 S.Ct. 2505). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

crimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law. *See Beard v. Flying J, Inc.,* 266 F.3d 792, 798 (8th Cir.2001) (stating "[w]e evaluate [the plaintiff's] claims under Title VII and under the Iowa Civil Rights Act using the same legal principles") (citing *Falczynski v. Amoco Oil Co.,* 533 N.W.2d 226, 230 n. 2 (Iowa 1995)). This is appropriate because the Iowa Supreme Court has recognized that federal precedent is applicable to discrimination claims under the ICRA, IOWA CODE CH. 216. *See Vivian v. Madison,* 601 N.W.2d 872, 873 (Iowa 1999) ("The ICRA was modeled after Title VII of the United States Civil Rights Act"); *cf. Fuller v. Iowa Dep't of Human Servs.,* 576 N.W.2d 324, 329 (Iowa 1998) (recognizing that Chapter 216's prohibition on disability discrimination is the state-law "counterpart" to the ADA, and that, "[i]n considering a disability discrimination claim brought under Iowa Code chapter 216, we look to the ADA and cases interpreting its language. We also consider the underlying federal regulations established by the Equal Employment Opportunity Commission (hereinafter 'EEOC'), the agency responsible for enforcing the ADA.") (internal citations omitted). Iowa courts, therefore, traditionally turn to federal law for guidance in evaluating the ICRA. *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Federal law, however, is not controlling. Iowa courts look simply to the analytical framework utilized by the federal courts in assessing federal law, and federal law should not substitute the language of the federal statutes for the clear words of the ICRA. *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *accord Board of Supervisors of Buchanan County v. Iowa Civil Rights Comm'n,* 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 516 (Iowa 1990).").

### 1. Analytical framework: The burden-shifting paradigm

█ Peda contends that Standridge and Haack created a hostile work environment. " 'Sexual discrimination that creates a hostile or abusive work environment is a violation of Title VII of the Civil Rights Act of 1964.' A hostile work environment 'arises when sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Rheineck v. Hutchinson Tech., Inc.,* 261 F.3d 751, 756 (8th Cir.2001) (quoting *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1013 (8th Cir.1988)) (internal citations omitted).

The three-stage order of proof and presumptions governing discrimination cases in which there is no direct evidence of discriminatory intent is well-established. First, the plaintiff must establish a *prima facie* case of discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmmty. Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). As previously stated, Peda avers a claim based on a hostile work environment. In *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 987 (8th Cir.1999), the Eighth Circuit Court of Appeals recognized the distinction between harassment by supervisors and harassment by non-supervisory coworkers. Here, Peda asserts that her supervisors are responsible for the creation of a hostile work environment. The Supreme Court

has discussed at length an employer's vicarious liability for a hostile work environment created by a supervisor. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). A *prima facie* case of discrimination in this type of case consists of a showing: (1) that he or she belonged to a protected class; (2) that he or she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment. *Beard v. Flying J, Inc.,* 266 F.3d 792, 797–98 (8th Cir.2001) (citing *Schoffstall v. Henderson,* 223 F.3d 818, 826 (8th Cir.2000)); *accord Hocevar v. Purdue Frederick Co.,* 223 F.3d 721, 736 (8th Cir. 2000) (elements of hostile work environment claim created by supervisor are: "(1) that she is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment.") (citing *Phillips v. Taco Bell Corp.,* 156 F.3d 884, 888 (8th Cir.1998)).

If the plaintiff meets this burden and establishes her *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. At this point, the plaintiff is entitled to judgment as a matter of law unless the defendant successfully rebuts the presumption. *See St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. 2742. To rebut this presumption of discrimination, the burden falls to the defendant employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. If the defendant meets this burden, "the *McDonnell Doug-*

*las* framework—with its presumptions and burdens"—disappears. *St. Mary's Honor Center,* 509 U.S. at 510, 113 S.Ct. 2742. In this case, FDAH argues that, even if Peda has established a *prima facie* case of discrimination, it rebutted any presumption of discrimination, having met its burden of production by proffering a legitimate, nondiscriminatory reason for her termination, *i.e.,* that Peda was unable to return to work.

Still, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' *Burdine, supra,* at 256, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, *St. Mary's Honor Center, supra,* at 511, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom … on the issue of whether the defendant's explanation is pretextual,' *Burdine, supra,* at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### 2. *Peda's* **prima facie** *case*

Having outlined the analytical framework applicable to this litigation, the court turns now to whether Peda has established a *prima facie* case of hostile environment sex discrimination. Again, as noted above, the elements of a *prima facie* case of this ilk of gender discrimination are: (1) membership in a protected class; (2) unwelcome sexual harassment; (3) harassment that was based on sex; and (4) harassment that affected a term, condition, or privilege of employment. *E.g., Beard,* 266 F.3d at

797–98; *accord Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000) (Title VII complainant must prove that "(a) she is a member in a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action."); *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir.1999) ("that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective remedial action."); *Scusa v. Nestle U.S.A., Co.*, 181 F.3d 958, 965 (8th Cir.1999) ("that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of the harassment and failed to take proper remedial action."); *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir.1998) ("To prove that she was subjected to a hostile work environment in violation of Title VII, [plaintiff] had to show that: '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [defendants] knew or should have known of the harassment and failed to take proper remedial action.' ") (quoting *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir.1993)); *Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1106 (8th Cir.

1998) ("There are five elements that [plaintiff] was required to prove to prevail on her claim: that she was a member of a protected group, that she was subjected to unwelcome harassment in the workplace, that the harassment was based on sex, that the harassment affected a 'term, condition, or privilege of employment,' and that [defendant] 'knew or should have known of the harassment and failed to take proper remedial action.' ") (quoting *Todd v. Ortho Biotech, Inc.*, 138 F.3d 733, 736 (8th Cir.), *cert. granted, judgment vacated*, 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998); *Callanan v. Runyun*, 75 F.3d 1293, 1296 (8th Cir.1996) (" '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [her employer] knew or should have known of the harassment and failed to take proper remedial action.' ") (quoting *Kopp*, 13 F.3d at 269)).. In their reply brief, the defendants dispute only the establishment of the second and third elements. Likewise, the court will not address either the first or fourth elements of Peda's claim.

### a. Unwelcome sexual harassment

FDAH argues that, rather than establishing that she was subjected to unwelcome sexual harassment, Peda "has argued throughout this matter that she was harassed or treated differently because she questioned the accuracy of her commissions." [Deft.'s Reply Br., at 3]. The court has significant difficulty surmising the conduct that Peda alleges to constitute harassment because her argument states only that "Plaintiff was arguably subjected to unwelcome sexual harassment," [Pltf.'s Br., at 8], without pointing to any incidents or conduct that might be harassment. But while Peda does not set forth an explicit

argument on this element, the court reads her brief as asserting that the following incidents are the complained of harassment:

1. When Peda questioned the accuracy of sales reports, Haack told her to stop looking so closely at the reports and to focus on sales.

2. After Peda questioned a large shipment of pharmaceuticals, Standridge accompanied her on her sales route, purportedly to ascertain Peda's knowledge of the shipment.

3. When Haack became aware of Peda's medical problems, he, too, accompanied Peda on her sales route "when it was clear Plaintiff should have been off work at least for a day." [Pltf.'s Br., at 7].

4. During the October 7, 1999 meeting regarding the company credit card, Haack allegedly berated her and accused her of criminal activity.

5. Haack insisted on the completion of a project during a time when Peda was "incapable of physically or mentally completing the project at that time."

The question before the court is whether these incidents arise to the level of "unwelcome sexual harassment." The Supreme Court has instructed that, in order to be actionable sex harassment under Title VII, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Assuming that Peda subjectively perceived the complained of "harassment" in this case to be hostile or abusive, in order to establish her *prima*

*facie* case of gender discrimination created by a sexually hostile work environment, Peda must also demonstrate that the environment would reasonably be perceived as hostile or abusive. *See Harris,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295.

Avoiding a "mathematically precise test," the Supreme Court has provided guidance on this objective inquiry:

> [W]e can say that whether an environment is "hostile" or "abusive" can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . But . . . no single factor is required.

*Id.* at 22–23, 114 S.Ct. 367. Still, the standards for judging hostility must be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (citation omitted).

■ In this case, a reasonable person would not perceive the complained of conduct to be hostile or abusive. Each of the incidents alleged to constitute harassment relate directly to Peda's concerns over FDAH's sales figures and other disciplinary action. None of the incidents was objectively threatening or humiliating, nor were they frequent. Under all the circumstances, which include questionable performance evaluations indicating a need for supervision and improper use of the company credit card, it was reasonable to insist on a performance plan and to ride-along on Peda's sales routes. Viewing the totality of the circumstances in the light most favorable to Peda, the court cannot conclude that the complained of conduct rises to the level of actionable harassment

under Title VII. Therefore, because Peda has not generated a jury question on this element of her *prima facie* case of hostile work environment sexual harassment, the court will grant the defendants' motion on these claims.

#### b. Based on sex

 Even assuming that Peda established a genuine issue of material fact on the element of whether she was subjected to unwelcome sexual harassment, the court would still grant the defendants' motion for summary judgment because Peda has offered no evidence to show that the complained of conduct was "based on sex." While conduct need not be explicitly sexual in nature to violate the mandates of Title VII, *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir.1996), the harassing conduct must be "because of" sex. *E.g., Williams v. City of Kansas City, Missouri*, 223 F.3d 749, 753 (8th Cir.2000) ("Not all unpleasant conduct creates a hostile work environment. Rather the plaintiff must show that she was singled out because of her gender, and that the conduct was severe and pervasive."). The First Circuit Court of Appeals has explained:

> [Courts] accept that many different forms of offensive behavior may be included within the definition of hostile environment sexual harassment. However, the overtones of such behavior must be, at the very least, sex-based, so as to be a recognizable form of sex discrimination. Merely because a supervisor is overbearing or fellow employees unsociable and hard to get along with, does not suffice unless underlying motives of a sexual or gender discriminatory nature are implicated.

*Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 441 (1st Cir.1997).

 In short, there must be a causal connection between the complained of conduct and the plaintiff's gender. *See Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 567–68 (8th Cir. 2000). In this regard, the plaintiff must offer more than "speculation and conjecture to make the required connection from the mistreatment she alleges to a gender ... based animus." *Id.* In *Palesch v. Missouri Comm'n on Human Rights*, the Eighth Circuit Court of Appeals affirmed the district court's ruling granting the defendant's motion for summary judgment under circumstances similar to Peda's case. In *Palesch*, the plaintiff asserted that her supervisor became biased against her after the plaintiff wrote a memo complaining about the conduct of two co-workers. *Id.* at 567. In addition, she contended that co-workers and supervisors frequently ignored her and had threatened her with bodily harm. *Id.* And as in Peda's case, the plaintiff "failed to provide anything more than bare allegations that her co-workers harassed her because of her race or gender." *Id.* Furthermore, the plaintiff in *Palesch* admitted to non-discriminatory explanations for her co-workers' behavior—namely, she had personality conflicts with numerous colleagues. *Id.*

 Similarly, Peda admits that her relationship with Haack deteriorated and Haack began to require more work of her *because* she questioned the accuracy of the company's sales reports. Peda has failed to present any evidence, much less sufficient evidence, to create a jury question on whether Haack's treatment of her was based on discriminatory animus. In her charge to the EEOC, Peda asserts that Haack required more work of her than of male territory managers. She has not renewed this argument before this court, but the court notes that one of Peda's major complaints with FDAH is that Haack required her to complete a major project

during a time frame when she was physically incapable of doing work. The evidence shows, however, that the facsimile outlining the tasks to be completed was directed to *all* territory managers, not only to Peda. To determine whether harassing conduct was based on sex, "the key inquiry is whether 'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Quick,* 90 F.3d at 1378 (quoting *Harris,* 510 U.S. at 25, 114 S.Ct. 367) (Ginsburg, J., concurring). Here, there is no evidence that Haack required more of Peda than of similarly situated male employees; rather, the evidence substantially supports FDAH's contention that Haack required the same work from each of the territory managers. What differential may have existed, by Peda's own admission, resulted from Peda's questioning of sales reports, her improper use of the company credit card, and her marginal performance evaluations. In short, even considering the evidence in the light most favorable to Peda, Peda has failed to generate a jury question on whether the complained of conduct was "because of" sex. Accordingly, the court also finds, as a matter of law, that Peda failed to create a genuine issue of material fact on this element of her hostile work environment claim.

### 3. *Legitimate, nondiscriminatory reason*

■ Defendants further contend that, even if Peda successfully established a *prima facie* case of gender discrimination, defendants have articulated a legitimate nondiscriminatory reason for Peda's termination. The undisputed facts of this case are that, after an extended absence for medical reasons, FDAH refused Peda's request for an additional extension and terminated her employment in May of 2000. Peda concedes that, standing alone, her inability to return to work would be sufficient for FDAH to terminate her employment. However, she states—without legal citation—that "defendants cannot be allowed to use that defense to avoid liability when it was their own actions that caused Plaintiff's inability to return to work." [Pltf.'s Br., at 9].

Because the court has found that the complained of conduct in this case does not rise to the level of actionable harassment, plaintiff's policy argument does not hold water. Further, there is no doubt that FDAH has a legitimate interest in having its sales territory covered. Still, Peda did not present evidence that, if proven at trial, would permit a jury to conclude that FDAH's legitimate non-discriminatory reason for the adverse employment decisions—Peda's inability to return to work—was pretextual. *See Johnson v. Baptist Med. Ctr.,* 97 F.3d 1070, 1072 (8th Cir. 1996). The Eighth Circuit Court of Appeals has recognized the importance of job attendance as a legitimate business justification. *Greer v. Emerson Electric Co.,* 185 F.3d 917, 921 (8th Cir.1999) ("We have recognized that 'regular and reliable attendance is a necessary element of most jobs.'") (quoting *Nesser v. Trans World Airlines, Inc.,* 160 F.3d 442, 445 (8th Cir. 1998); *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 198 (4th Cir.1997) (An employee who is "unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones.")).

Under the *McDonnell Douglas* burden-shifting paradigm, the establishment of a plaintiff's *prima facie* case of discrimination places an obligation on the defendant to come forward with a legitimate, nondiscriminatory reason for its employment decision. *See Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.1997) (en banc) (applying *McDonnell Douglas* burden shifting analysis in an age discrimination case). If the

defendant carries this burden, the plaintiff can still prevail if she can proffer evidence of pretext and disbelief of the defendant's explanation. *Id.* at 837, 93 S.Ct. 1817. Nevertheless, "[m]erely disputing [the defendant's] reason is insufficient.... [The plaintiff] 'must show both that the reason was false, and that discrimination was the real reason.'" *Id.* at 838, n. 5, 93 S.Ct. 1817 (quoting *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742). Here, the court has no difficulty concluding that Peda has not carried her burden by failing to offer any evidence of pretext. Therefore, even if the court were to find that Peda generated a genuine issue of material fact on her *prima facie* case of discrimination, the court would still grant the defendants' motion for summary judgment because Peda offered no evidence from which a reasonable jury could find that the defendants' proffered reason for her termination was pretextual.[2]

### C. Standridge And Haack As Proper Defendants

The defendants also asserted in their motion for summary judgment that, even if the court were to allow Peda's action to go forward with respect to the corporate defendants, Standridge and Haack should be dismissed from the lawsuit. Because the court is granting the defendants' motion for summary judgment with respect to Peda's sex discrimination claims, the court will deny the defendants' motion for summary judgment on Standridge's and Haack's individual liability as moot.[3]

### D. Wage Payment Collection Claim

The defendants also assert that much of Peda's claim for wages under Iowa Code chapter 91A is time-barred, at least as to her claims for wages prior to March 28, 1999, which is two years after she filed a petition for wages in Iowa district court because the applicable statute of limitations under chapter 91A is two years. *See* Iowa Code § 614.1(8) (two-year statute of limitations on claims for wages).

However, the court declines to reach this argument in light of the fact that the sole remaining claim in this case is a state-law matter. Under 28 U.S.C. § 1367 (sup-

---

**2.** While the court could liberally read the plaintiff's complaint as arguing that the fact a male employee was hired to replace Peda is evidence of pretext, the Eighth Circuit Court of Appeals has held that a "strong showing" that the employees offered for comparison are "similarly situated in all relevant respects" is required. *See Scott v. County of Ramsey,* 180 F.3d 913, 917 (8th Cir.1999) (requiring a "strong showing" that the employees compared must be "similarly situated in all relevant respects ... when the only evidence of pretext or discrimination is disparate treatment"). Here, Peda has come forward with no evidence, much less a strong showing, that she and her replacement at FDAH were similarly situated.

**3.** The court notes that, in any event, the individual defendants could not be held liable under Title VII: "[S]upervisors may not be held individually liable under Title VII." *Bonomolo–Hagen v. Clay Central–Everly Cmty.*

*Sch. Dist.,* 121 F.3d 446, 447 (8th Cir.1997) (citing *Spencer v. Ripley County State Bank,* 123 F.3d 690, 691–92 (8th Cir.1997) (*per curiam*)); *accord Lenhardt v. Basic Inst. of Tech., Inc.,* 55 F.3d 377, 381 (8th Cir.1995) (noting that "[e]very circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII"); *Smith v. St. Bernards Reg'l Med. Ctr.,* 19 F.3d 1254, 1255 (8th Cir.1994) (holding that a Title VII plaintiff could not hold co-workers liable in their individual capacities under Title VII). The court notes, however, that, in *Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999), the Iowa Supreme Court, in answering a certified question of state law presented to it by a federal district court, held that under Iowa Code section 216.6, an individual supervisor can be subjected to individual liability. *Id.* at 878.

plemental jurisdiction), a federal district court "may decline to exercise supplemental jurisdiction" if—

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). This subsection gives a court the discretion to reject jurisdiction over supplemental claims, "but only to a point." *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir.1994). "The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein." *Id.* Thus, where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg*, 969 F.2d 721, 726–27 (8th Cir.1992).

 In this case, the situation described in subpart 3 in which all federal question claims have been dismissed counsels against the retention of jurisdiction. The court has considered whether the exercise of jurisdiction [would] advance[ ] 'the values of economy, convenience, fairness, and comity,' *Allen v. City of Los Angeles*, 92 F.3d 842, 846 (9th Cir.1996), *overruled in part*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc) (quoting *Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.1994)), but nevertheless concludes that remand to state court will best serve these ends. Therefore, the court will not elect to retain jurisdiction because it finds that remand is appropriate in this matter and will remand Peda's remaining state-law claim to state court.

## III. CONCLUSION

The court finds that Peda has failed to generate a jury question on her claims of sex discrimination under both Title VII and the ICRA. That is so because she did not come forward with evidence sufficient for a reasonable juror to find (1) that she was subjected to unwelcome sexual harassment, (2) that any alleged harassment was because of her sex, or (3) that the defendants' proffered legitimate reason for her termination was pretextual. Therefore, the court **grants the defendants' motion for summary judgment on the plaintiff's claims of hostile work environment sexual discrimination (counts I and II).** The defendants' motion for summary judgment to dismiss individual defendants Standridge and Haack is, accordingly, **denied as moot.**

Because the parties previously stipulated to the dismissal of the plaintiff's age claims (counts III and IV) (Doc. No. 24), the plaintiff's sole remaining claim is her state-law claim under the Iowa Wage Collection Payment Law. The court, however, will exercise its discretion under 28 U.S.C. § 1367(c)(3) and **declines jurisdiction** over this claim (count V) and **hereby remands the case to state court.** Because the court declines to exercise supplemental jurisdiction over the remaining state-law claim, this matter must be **dismissed in its entirety**. Plaintiff may refile her state-law claims in state court pursuant to Iowa's "failure of action" statute.[4]

**IT IS SO ORDERED.**

---

4. Iowa Code § 614.10 provides: "If, after the

commencement of an action, the plaintiff, for

any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."