Michael R. SAMIDE, Plaintiff,

v.

TITAN INTERNATIONAL, INC., an Illinois corporation; Dico, Inc., an Iowa corporation; and Dyneer Corp., a Delaware corporation, Defendants.

No. 4:01–CV–90545.

United States District Court, S.D. Iowa, Central Division.

May 31, 2002.

David Harris Goldman, Babich, Goldman, Cashatt & Renzo, PC, Des Moines, IA, for Plaintiff.

Deborah M. Tharnish, Gene R. Lasuer, Davis, Brown, Koehn Shors & Roberts PC, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PRATT, District Judge.

Before the Court is Defendant Titan International Inc.'s ("Titan"), Defendant Dyneer Corporation's ("Dyneer"), and Defendant Dico, Inc.'s ("Dico") Motion for Summary Judgment (Clerk's No. 5). A hearing was held on the matter May 3, 2002. The matter is fully submitted.

### I. FACTUAL BACKGROUND

Dico is an Iowa corporation which, at all times relevant to this action, was a wholly owned subsidiary of Dyneer. Plaintiff Michael R. Samide ("Plaintiff") accepted employment as the President of Dico, pursuant to a written agreement entered into on March 23, 1993.

Plaintiff's employment agreement provided for an annual salary of $175,000.00 per year and an annual bonus. *See* Exh. 2. Section III of the agreement, entitled "Deferred Compensation" provided for the establishment of a "new deferred compensation plan ... related directly to Dico's individual profit performance for Michael R. Samide and other key managers at

Dico." *Id.* In the event that Dico divested or Dyneer was sold, payment of the deferred compensation plan was to be made in accordance with the provisions of Section V of the agreement which provides:

> In the event that 100% of the Common Stock of Dyneer or Dico, or substantially all of the assets of Dico are divested by either of their respective shareholder(s), simultaneously with the Closing (the "Closing") of such sale or divestment, Dyneer will fund a "Rabbi Trust", with an independent financial institution as trustee, in an amount equal to the Account Balance[1] as of the date of the Closing. Such amount shall be invested in such short-term marketable securities as mutually agreed upon between you and Dyneer.

*Id.*

Plaintiff claims that he accepted employment with Dico with the understanding that the objective was to make Dico more profitable over the next two to three years and then sell it. *See* Pl.'s Am. Compl. at ¶ 11. At some time shortly after assuming the Presidency of Dico, Plaintiff alleges he found out that Titan was in negotiations with Dyneer to merge. *Id.* at 30. Plaintiff claims that in July 1993, the Chairman of the Board of Dyneer offered to modify his contract to provide additional money to the Plaintiff in the event that Dyneer or Dico was sold. *Id.* at ¶ 33. On September 21, 1993, Plaintiff accepted a modification to his employment agreement. The modification provided that upon the sale of Dyneer or the Divestment of Dico, the Rabbi Trust would be funded with "the greater of ... the Account Balance as of

the date of the Closing or ... $220,000." Exh. 5.[2]

On November 10, 1993, Titan and Dyneer closed a sale wherein Titan bought all of Dyneer's stock. Two days later, Titan gave Samide a letter which stated, "Effective today, you will be transferred to the Titan Salary Payroll at your current Dico salary." Exh. 10. Additionally, the letter stated that Titan would accept all responsibility for the Rabbi Trust. *Id.*

Plaintiff continued as President of Dico until the time that Dico merged into Titan in 1996. Pl.'s Am. Compl. at ¶ 47. In November 1993, Plaintiff was appointed Vice President of Operations of Titan. *Id.* In December 1994, he became Chief Operating Officer of Titan. *Id.* Eventually, Plaintiff resigned from Titan on January 8, 1999. Plaintiff met with Titan's President, Maurice Taylor, on January 12, 1999 and demanded that the Rabbi Trust be funded. Def's Statement of Material Fact at ¶ 15. Plaintiff claims Taylor responded that he did not remember such an obligation.

On August 9, 2001, Plaintiff filed a Petition in state court charging Titan, Dico, and Dyneer with Breach of Contract. The matter was removed to the United States District Court for the Southern District of Iowa for diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Plaintiff filed an Amended and Substituted Complaint on March 21, 2002, alleging Breach of Contract, or in the alternative, violation of the Employee Retirement Income Security Act.

---

1. The "Account Balance" was to consist of annual payments credited to the Plaintiff under the Deferred Compensation plan. Annually, Plaintiff was to have an account credited with an amount equal to "40% of the 'Annual Bonus Pool." ' The Annual Bonus Pool con-

sisted of certain percentages of Dico's profit earnings.

2. The modification also altered the formula for calculating how much money would be placed into the Deferred Compensation account annually. *See* Exh. 5.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990).

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda General Hospital,* 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried," *Anderson v. Viking Pump Div., Houdaille Indus., Inc.,* 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Board of Educ.,* 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323; *Anderson,* 477 U.S. at 248. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c), (e); *Celotex*

*Corp.,* 477 U.S. at 322–23; *Anderson,* 477 U.S. at 257. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis added). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248. "As to materiality, the substantive law will identify which facts are material .... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### III. COUNT I (ERISA)

■ Plaintiff's first cause of action alleges that the Defendants were obligated to pay $220,000.00 plus interest as a deferred compensation benefit pursuant to a "top hat" plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.,* and specifically under 29 U.S.C. § 1132(a)(1)(B). Plaintiff did not raise this cause of action in his original complaint. Rather, the issue was raised in an amended and substituted complaint filed on March 21, 2002. Defendants filed a supplement to the motion for summary judgment on March 29, 2002. Therein, Defendants argue that summary judgment on the ERISA claim is appropriate because the claim is barred by the statute of limitations. Additionally, Defendants argue that the deferred compensation plan is not an ERISA plan under which Plaintiff has a right to recover benefits.

Plaintiff has not filed a resistance to Defendant's motion for summary judgment on the ERISA claim. Local Rule 7.1(f) provides, "If no timely resistance to a motion is filed, the motion may be granted without prior notice from the court." Accordingly, Defendants' motion for summary judgment with respect to Count I

(ERISA) of Plaintiff's Amended and Substituted Complaint is granted.

### IV. COUNT II (BREACH OF CONTRACT)

In Count II of the Amended and Substituted Complaint, Plaintiff alleges that Defendant breached his employment agreement by failing to fund the Rabbi Trust. There is no dispute that the obligation to fund the Rabbi Trust rested with Titan. Indeed, Titan acknowledged that it would assume liability for the Trust upon its acquisition of Dyneer. Similarly, there is no dispute that the Rabbi Trust was never funded. Thus, the "fighting" issue in this case is what statutory limitations period is applicable to Plaintiff's claim.

■ Both parties agree that Plaintiff's claim is governed by Iowa law. Defendants contend that Plaintiff's breach of contract claim is a wage payment claim subject to the two-year statute of limitations for wages set forth in Iowa Code § 614.1(8). Plaintiff, on the other hand, argues that his claim is a contract claim subject to the ten-year statute of limitations for written contracts set forth in Iowa Code § 614.1(5).

■ Whether the funds to be placed into the Rabbi Trust constitute "wages" for purposes of Iowa Code chapter 91A involves statutory interpretation which is a question of law for the court to decide. *See Gabelmann v. NFO, Inc.,* 571 N.W.2d 476, 483 (Iowa 1997); *Hornby v. State,* 559 N.W.2d 23, 25 (Iowa 1997). "Wages" is broadly defined by the Iowa Code as compensation owed by an employer for:

a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.

b. Vacation, holiday, sick leave, and severance payments which are due

an employee under an agreement with the employer or under a policy of the employer.

   c.  Any payments to the employee or *to a fund for the benefit of the employee,* including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.

Iowa Code § 91A.2(7) (emphasis added).

The Iowa Supreme Court has liberally construed the term "wages" to encompass a wide variety of employee benefits. For instance, in *Phipps v. IASD Health Services Corp.,* 558 N.W.2d 198 (Iowa 1997), the Court found that an employer's practice of "gainsharing," wherein employees received money based on the performance of the company, constituted wages within the meaning of the Iowa Wage Payment Collection Act. *Id.* at 202. Similarly, in *Dallenbach v. MAPCO Gas Products, Inc.,* 459 N.W.2d 483, 488 (Iowa 1990), the Court found that an employee's annual bonus was a wage under the Act because it "clearly was part of the compensation owed him for his labor or services." *Id.* at 486. In *Hornby,* the Court found that long-term disability benefits were wages within the meaning of § 91A.2(7) because the benefits were "payments to the employee . . . for the benefit of the employee . . . [for] health, hospital, [or] welfare . . . which are due an employee under an agreement with the employer." *Hornby,* 559 N.W.2d at 26. In *Gabelmann,* the Iowa Supreme Court found that a promise by the employer to an employee to pay an $80 housing allowance per month would be governed by the two year statute of limita-

tions applicable to wages rather than the five year statute of limitations period applicable to unwritten contracts. *See Gabelmann,* 571 N.W.2d at 482.

■ In Plaintiff's original employment agreement, Dyneer agreed that in the event of the sale of Dyneer or the divestment of Dico, Dyneer would fund a "Rabbi Trust" in "an amount equal to the Account Balance as of the date of the Closing." Exh. 2. In the amendment to Plaintiff's employment agreement, the language changed only slightly, providing that the Rabbi Trust would be funded with an amount "equal to the greater of: (i) the Account Balance as of the date of the Closing or (ii) $220,000." Plaintiff urges the Court to "look to the understanding of the parties" to find that the amended provisions for the deferred compensation fund cannot be classified as wages. Specifically, Plaintiff claims that he was not told that negotiations between Dyneer and Titan had begun prior to his taking the position as President of Dico. When he learned of this alleged deceit, Plaintiff spoke to Dyneer officials, who he claims agreed to make a $220,000 plus interest payment to him in the event of the sale of Dyneer:

> The mechanism used for recording this obligation was to amend Samide's employment contract to provide for a minimum $220,000.00 plus interest provision under the deferred compensation section of the agreement. The fact is, that this was done as a simple and convenient way of providing for the recording of the obligation. No one thought of the $220,000.00 as actual deferred compensation. Everyone understood that obligation to be just what is [sic] was, a payment to Samide in the event the sale of Dyneer to Titan went through, which it did shortly thereafter.

Pl.'s Resistance at 5.

■ Plaintiff's argument asks the Court to ignore one of the fundamental

tenets of contract law and interpretation, however. Extrinsic evidence to interpret contract language is only admissible to interpret the language actually used by the parties, and then only after an initial showing that the language is ambiguous. "Extrinsic evidence offered to show 'what the parties meant to say' instead of 'what was meant by what they said' is not admissible. *Bankers Trust Co. v. Woltz,* 326 N.W.2d 274, 276 (Iowa 1982). In this case, the Court does not believe that the contract language is ambiguous. Therefore, extrinsic evidence of what the parties "intended" when they agreed on a $220,000 floor for the Rabbi Trust is not admissible. The plain language of the contract must govern.

■ The Court believes the present case is governed by the Iowa Supreme Court's decision in *Gabelmann.* There, the court found that a promise by an employer to pay a "housing allowance" on a monthly basis should be considered wages under the Iowa Code. "We think that a 'housing allowance' to be paid on a monthly basis and negotiated as part of a salary package, fits the definition of 'wages.'" *Gabelmann,* 571 N.W.2d at 482.

In this case, Plaintiff's amended employment contract provided that payment would be made into the deferred compensation fund "[a]nnually, immediately following completion of Dyneer's audited financial statements" in an amount based upon certain earnings of Dico. The contract provided a specific manner in which funds deposited to the deferred compensation account would vest. Additionally, the contract provided that, in the event that Dyneer was sold, a Rabbi Trust would be established "simultaneously with the Closing." Exh. 5. The amount to be placed into the Rabbi Trust was to be the greater of any accrued amount in the deferred compensation plan account, or $220,000. Plaintiff negotiated in his original employ-

ment agreement for a deferred compensation plan as part of his overall compensation package. Indeed, Plaintiff's Exhibit 1, entitled "Summary of Compensation Package with Michael R. Samide" specifically lists the deferred compensation plan. *See* Exh. 1. Plaintiff also negotiated, or at least agreed to a modification of the provision providing that no less that $220,000.00 would be deposited into the Rabbi Fund in the event of the sale of Dyneer. The mere fact that a minimum amount of deferred compensation was arranged in light of the pending sale of Dyneer does not change the fact that Plaintiff negotiated for and received a deferred compensation plan as part of his compensation package. Based on the evidence now before it, the Court is convinced that funds to be placed into the Rabbi Trust were wages within the meaning of the Iowa Code.

■ Perhaps the most compelling reason for the deferred compensation funds to be characterized as "wages" is the fact that the definition of wages in § 91A specifically includes "Any payments ... to a fund for the benefit of the employee." It would appear that the plain language of the statute encompasses the factual scenario now before the Court. The monies to be placed into the Rabbi Trust were clearly supposed to have been payments by the employer into a fund for the benefit of the Plaintiff. Plaintiff argues that the following statutory language excludes the fund at issue in this case from the definition of wages: "The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages." The Court believes that this language is simply meant to exclude from the definition of wages payments that have *already been made.* That is, once a payment has been turned over to the possession of an employee, it can no longer be

characterized as a wage that would be due and owing, and hence collectable under the Iowa Wage Payment Collection Act.

■ Having found that the deferred compensation fund constitutes "wages," a two year statute of limitations period is applicable pursuant to § 614.1(8). The Court now turns to the question: when did Plaintiff's cause of action in this matter accrue? Plaintiff argues that his cause of action in this case began to accrue after August 18, 2001, the date when Titan executives first refused his demand for payment of the $220,000.00. Defendants claim that Plaintiff's cause of action accrued on the date when he first knew or reasonably should have known that the Rabbi Trust was not funded.

■ Because this matter is founded on diversity of citizenship, the Court looks to Iowa law to determine when the cause of action accrued. *See Larsen v. Mayo Med. Center,* 218 F.3d 863 (8th Cir.2000); *Miles v. A. O. Smith Harvestore Prods., Inc.,* 992 F.2d 813 (8th Cir.1993); *Klempka v. G.D. Searle & Co.,* 963 F.2d 168 (8th Cir.1992) (holding that the court looks to state law to determine when cause of action accrues in cases founded on diversity jurisdiction). Again, it appears that *Gabelmann* controls the issue. "The two-year statute of limitations for wages commences as each payment comes due." *Gabelmann,* 571 N.W.2d at 482 (citing *Halverson v. Lincoln Commodities, Inc.,* 297 N.W.2d 518, 521 (Iowa 1980)). In this case, the language of Plaintiff's employment agreement is clear that funding of the Rabbi Trust was due "simultaneously with the Closing" of the sale of Dyneer to Titan. *See* Exh. 5. In *Gabelmann,* the Court found that the promised housing payment was payable at a rate of "$80 *per month." Id.* at 482 (emphasis in original). Finding that the "per month" language provided the due date for each payment, the Court held that the employer's failure to pay the housing

allowance "constituted a breach of the employment agreement as to each payment coming due. A cause of action therefore accrued for each payment as it became due, and the two-year statute of limitations began to run for that payment." *Id.*

Accordingly, the Court finds that the plain language of Plaintiff's employment agreement provided that funding of the Rabbi Trust was due simultaneously with the closing of the sale of Dyneer to Titan. Thus, Plaintiff had two years from November 10, 1993, the date payment was due pursuant to the terms of his contract, to formally raise his cause of action. Because Plaintiff did not bring suit until August 9, 2001, nearly eight years after his cause of action accrued, the claim is time-barred.

## V. CONCLUSION

With regard to Count I of Plaintiff's Complaint, the Defendant's Motion for Summary Judgment is GRANTED because the Plaintiff failed to file a timely resistance. With regard to Count II of Plaintiff's Complaint, the Court has made the determination that the claim is one for wages. The Court has also found that the claim is time-barred for failure to bring suit within the two-year statute of limitations period. Accordingly, Defendant's Motion for Summary Judgment with respect to Count II is GRANTED. The Clerk of Court is directed to enter judgment in favor of the defendants.

IT IS SO ORDERED