Karen PEDA, Plaintiff,

v.

FORT DODGE ANIMAL HEALTH, INC., a Division of Wyeth Company; and Wyeth Company, a Delaware Corporation, Defendants.

No. C03–3010–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Nov. 24, 2003.

Stanley E. Munger, Munger, Reinsch-midt & Denne, Sioux City, IA, for Plaintiff.

Deborah M. Tharnish, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND THE DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .976

II. LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .977
 A. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .977
 B. Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .979
 1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .979
 2. Is Peda's IWPCA claim time-barred? . . . . . . . . . . . . . . . . . . . . . .979
 C. Preclusive Effect Of The Peda I Judgment . . . . . . . . . . . . . . . . . . . . . .982
 1. Res judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .982
 a. Same parties or their privies . . . . . . . . . . . . . . . . . . . . . . . . .983
 b. Same cause of action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .984

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .986

## I. INTRODUCTION

On March 2, 2001, plaintiff Karen Peda ("Peda") filed a complaint with this court against defendants Fort Dodge Animal Health (FDAH), American Home Products Corporation ("AHP") and two individually named defendants which averred the following causes of action: (1) sexual discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.* and the Iowa Civil Rights Act ("ICRA"), IOWA CODE CH. 216; and (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.* and the ICRA. On March 28, 2001, Peda filed a claim against FDAH and AHP under the Iowa Wage Payment Collection Act, IOWA CODE CH. 91A ("IWPCA") in the Iowa District Court for Polk County. The IWPCA claim was attached to the federal complaint in order to preclude multiple forum litigation, and was included in the plain-

tiff's "Second Amended and Substituted Complaint" filed on July 9, 2001. Defendants' Appendix in Support of Motion for Summary Judgment, Doc. No. 17, at 50 ("Def.s' App."). On May 1, 2002, the parties stipulated to the dismissal of Peda's age discrimination claims. On April 17, 2002, then-defendant AHP filed a Motion for Summary Judgment, which plaintiff Peda timely resisted. On June 20, 2002, this court entered its "Memorandum Opinion and Order Regarding Defendants' Motion for Summary Judgment," finding that Peda "failed to generate a jury question on her claims of sex discrimination under both Title VII and the ICRA." *Peda v. Am. Home Prods. Corp.*, 214 F.Supp.2d 1007, 1022 (N.D.Iowa 2002) ("*Peda I*"). As all of the federal law claims had been disposed of, this court exercised its discretion under 28 U.S.C. § 1367(c)(3) and did not retain jurisdiction over the IWPCA claim, but rather, remanded it to state court.[1] *Id.*

---

1. For a more detailed discussion of the factual background surrounding the plaintiff's claims, please refer to this court's decision in

*Peda v. American Home Products Corporation,* C01–3020–MWB, 214 F.Supp.2d 1007 (N.D.Iowa 2002) ("*Peda I*").

On December 2, 2002, Peda filed suit in the Iowa District Court for Webster County against defendants Fort Dodge Animal Health ("FDAH") and Wyeth Corporation ("Wyeth") f/k/a AHP. In her complaint, Peda asserted a claim under the IWPCA for recovery of lost wages and an Iowa common law claim of wrongful termination in violation of public policy. On January 28, 2003, defendants FDAH and Wyeth filed an answer denying all of Peda's allegations, and asserting affirmative defenses. Defendants FDAH and Wyeth removed the case to this court on February 3, 2003, pursuant to 28 U.S.C. § 1332(a), asserting diversity of citizenship, as Wyeth is a Delaware Corporation with its principal place of business in New Jersey.[2] and Peda was domiciled in Iowa at the time of the events in question, and a resident of North Carolina at the time of the filing of the current action. (Doc. No. 1). Defendants additionally averred that diversity jurisdiction was appropriate as the amount in controversy is in excess of the $75,000 jurisdictionally required amount. On July 7, 2003, Peda filed a motion for partial summary judgment seeking a determination by the court that as a matter of law her IWPCA claim was properly within the statute of limitations, and as such was tolled under the Iowa 'savings' statute, IOWA CODE § 614.10, and that her wrongful termination claim was not precluded by principles of res judicata. (Doc. No. 10–1). On July 30, 2003, defendants Wyeth and FDAH filed both a resistance to the plaintiff's partial motion for summary judgment, as well as a cross-motion for summary judgment asserting that the plaintiff's common law wrongful discharge claim was barred on principles of res judicata, and that the IWCA claim was barred as outside the statute of limitations when the case was originally filed on March 2, 2001. (Doc. Nos.13 & 14). On August 1, 2003, Peda filed a resistance to the defendants' cross-motion for summary judgment which incorporated all of the arguments she previously made for partial summary judgment as her grounds for resistance to the defendants' motion for summary judgment. (Doc. No. 16).

In this matter plaintiff Peda is represented by Stanley E. Munger, Jay E. Denne, and Colby M. Lessmann of Munger, Reinschmidt & Denne, L.L.P. in Sioux City, Iowa. The defendants FDAH and Wyeth are represented by Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., in Des Moines Iowa. A jury trial on this matter is set for August 23, 2004.

## II. LEGAL DISCUSSION

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998);

---

2. Complete diversity of the parties exists as FDAH, as a division of Wyeth, has the same citizenship, for purposes of diversity jurisdiction, as Wyeth: New Jersey and Delaware. *See Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 284 (6th Cir.1990) (finding, for purposes of diversity jurisdiction, that a division of a corporation has the same 'domicile' as the corporate entity because "[a] division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes."); *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 n. 3 (7th Cir.1986) ("As an unincorporated division, the citizenship of [a division of a corporation] is that of the corporation of which it is a part."); *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280 (7th Cir.1986) ("Although a division may, if state law permits, sue in is own name, the state of which it is a citizen for purposes of determining diversity is the state of which the corporation that owns the division is a citizen.") (citation omitted).

*Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). " 'As to materiality … [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir. 1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same). With these standards in mind, the court turns to consider-

ation of the plaintiff's motion for partial summary judgment, and the defendants' cross-motion for summary judgment.

### B. Statute of Limitations

 Federal courts in diversity cases such as this case are required to apply the forum's choice of law rules in resolving conflicts of law questions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, the court must look to Iowa's conflicts law to determine the applicable statute of limitations. *Guaranty Trust Co. v. York*, 326 U.S. 99, 107–112, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Iowa's choice-of-law rules require the court to apply the forum state's law to matters classified as 'procedural.' *Brooks v. Engel*, 207 N.W.2d 110, 113 (Iowa 1973). As Iowa law classifies statutes of limitation as procedural, Iowa statutes of limitation apply to this matter. *See Cameron v. Hardisty*, 407 N.W.2d 595, 596 (Iowa 1987).

#### 1. Arguments of the parties

 Plaintiff Peda's IWPCA claim is based on her purported entitlement to approximately $18,000 in lost wages—a figure which is based on commissions she alleges she should have received in 1998. Second Amended and Substituted Complaint, Def.s' App. at 50. Defendants assert that as plaintiff is seeking lost wages she would have received as commissions in 1998, and as wages are defined under Iowa Code § 91A.2(7) to include compensation owed to the employee for commission, that Iowa Code § 614.1(8), providing for a two year limitations period for claims for wages, applies to the plaintiff's IWCPA claim. As such, defendants maintain that the plaintiff's IWPCA claim, as originally filed on March 28, 2001, is barred as it was not filed within the two-year statute of limitations period.[3] The plaintiff agrees that the two-year statute of limitations, as prescribed by section 614.1(8), applies to the IWPCA claim, but maintains that her filing of the original claim on March 28, 2001 was entirely timely. Further, plaintiff asserts as the filing of the original claim was within the limitations period, and her refiling of the IWPCA claim was within six months of its dismissal by this court in *Peda I*, the 'savings' statute, IOWA CODE § 614.10, has tolled the limitations period and it is properly before the court at this juncture.[4] As section 614.10 would not 'save' the IWPCA claim if the claim were not timely filed in the original action, the court must first address the defendant's contention that the claim was outside of the prescribed two-year limitations period when it was originally filed. *See e.g., Berntsen v. Coopers & Lybrand, L.L.P.*, 623 N.W.2d 843, 846 (Iowa 2001) ("the savings statute cannot continue an earlier case that itself was barred by the statute of limitations . . . . This is because the savings statute does not enlarge the statute of limitations for the original action.") (citations omitted).

#### 2. Is Peda's IWPCA claim time-barred?

Section 614.1(8) provides the statute of limitations for causes of action to recover wages:

---

3. Defendants made this exact same argument in their motion for summary judgment in *Peda I*, but as the court remanded the IWPCA claim to the Iowa state courts, it was unnecessary for the court to address the merits of this argument at that time. *Peda I*, C01–3020, Doc. No. 18, at pgs. 12–14.

4. Like the defendants, Peda made this exact same argument in resistance to the defendants' motion for summary judgment in *Peda I*, but as the court remanded the IWPCA claim to the Iowa state courts, it was unnecessary for the court to address the merits of her counter-argument at that time. *Peda I*, C01–3020–MWB, Doc. No. 27.

Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specifically declared:

 \* \* \* \* \* \*

8. **Wages.** Those founded on claims for wages or for a liability or penalty for failure to pay wages, within two years.

IOWA CODE § 614.1(8) (2003). Under the IWPCA, 'wages' are defined as follows:

7. "Wages" means compensation owed by an employer for:

a. Labor or services rendered by an employee, whether determined on a time, task piece, commission or other basis of calculation. . . .

IOWA CODE § 91A.2(7)(a). Commissions or payments that are due in increments would fall under the two-year limitations period set out in section 614.1(8). *See Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 482 (Iowa 1997) (finding two-year statute of limitations for 'wages' in section 614.1(8) applied to plaintiff's claim for wages under Iowa Code chapter 91A); *Hengesteg v. N. Eng'g, Inc.*, 478 N.W.2d 307, 309 (Iowa App.1991)(recognizing that as Iowa Code chapter 91A does not contain its own limitations period, that the two-year limitations period was controlling). Likewise, as the 'wages' that plaintiff Peda seeks to recover under the IWPCA are based on the commissions she would have received in 1998, her IWPCA claim falls squarely under the two-year statutory limitations period prescribed in section 614.1(8).

 Now that the appropriate limitations period has been ascertained, the court is left to address the question of when Peda's IWPCA claim accrued. Defendants argue that "the statute of limitations began to run when Karen Peda had knowledge of the underlying facts that gave rise to her claim for additional commissions." Def.s' Brief at pg. 6. Under this analysis, the defendants assert that Peda's cause of action accrued "at the time she became aware that FDAH was not paying her 1998 commissions, which at the very latest was in the first half of March 1999." Def.s' Brief at pg. 7. The plaintiff does not make an argument as to when Peda's cause of action accrued. The court disagrees, as does Iowa case law, with the defendants' rendition of when a claim for wages accrues. Pursuant to explicit instruction in Iowa case law, the two-year limitations period for collection of wages commences, with one exception, "as each payment comes due." [5] *Samide v. Titan Intn'l, Inc.*, 208 F.Supp.2d 1005, 1012 (S.D.Iowa 2002); *Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 482 (Iowa 1997); *Halverson v. Lincoln Commodities, Inc.*, 297 N.W.2d 518, 521 (Iowa 1980). The result being that "an employee may recover only so many payments as are within two years of when the petition is filed." *Gabelmann*, 571 N.W.2d at 482; *see Hengesteg v. N. Eng'g, Inc.*, 478 N.W.2d 307, 309 (Iowa App.1991). However, there is an exception to this general accrual rule. When commission payments are "not allocated to any particular sales transaction, but [are] based on the accumulated commission" then it will be characterized as a continuous, open, current account under section 614.5,[6] and the cause of action will accrue on the "date of the last item therein."

---

**5.** Despite arguments to the contrary by the defendants, as the accrual of the claim is based on when the payment comes due, the date that Peda complained that she was not receiving her commission payments, March 9, 2001, is irrelevant to the analysis. *See* Def.s' Brief at pg. 7–8.

**6.** Section 614.5 provides:

When there is a continuous, open, current account, the cause of action shall be deemed to have accrued on the date of the last item therein, as proved on the trial. IOWA CODE § 614.5.

IOWA CODE § 614.5; *Audus v. Sabre Communications Corp.*, 554 N.W.2d 868, 874 (Iowa 1996) (finding a continuous, open account where jury found commissions were based on three percent of all sales generated by plaintiff during the course of his employment and determining action not time barred where last sale by plaintiff and time when plaintiff demanded payment both occurred within the two-year statute of limitations). The "last item therein" language can be such occurrences as the last sale by the employee, the closing of the account, or the time at which the employee demands payment. *See Audus*, 554 N.W.2d at 874; *accord Patterson v. Patterson's Estate*, 189 N.W.2d 601, 605 (Iowa 1971); *Porter v. Chicago, I. & D. Ry.*, 99 Iowa 351, 68 N.W. 724, 725 (Iowa 1896). The question therefore becomes whether or not Peda's commission arrangement with FDAH constituted an continuous, open account. In *Peda I*, this court generally described Peda's commission arrangement as follows:

> As a territory manager, Peda's compensation package included a yearly salary and eligibility for commissions as well as a quarterly bonus if the entire company was meeting its quota and a year-end bonus if the company made its sales goal for the year.

*Peda I*, 214 F.Supp.2d at 1013. Territory managers would receive monthly commissions based on their increase in percent sales of certain products. Def.s' App., Deposition of Karen Peda, at 6. The commission rate for Peda was set at $250 per each percent increase in sales.[7] Additional bonuses and/or commissions a territory manager could earn included: (1) $500 bonus if the sales representative was within their quota at the end of each quarter; (2) $1,000 if the company was on quota at the

end of the quarter; and (3) a team bonus of $3,000 each if the company reached its goal sales number at the end of the year. The amount a territory manager could earn in total yearly commissions was capped at $25,000. Def.s' App. at 6. Peda's commissions, therefore, appear to be directly correlated to the volume of her sales transactions, squarely placing the commission structure within the general accrual rule and excluding the commission payments from the continuous and open account exception. Therefore, Peda's cause of action to recoup commissions under IWPCA accrued on each date that each commissions payment would became due and payable. *See Gabelmann*, 571 N.W.2d at 482; *see Hengesteg*, 478 N.W.2d at 309.

As Peda's commission payments became due and payable at various times over the course of 1998 through early 1999, her cause of action "accrued for each payment as it became due, and the two-year statute of limitations began to run for that payment." "Under *Halverson* [*v.Lincoln Commodities, Inc.*, 297 N.W.2d 518 (Iowa 1980)], [Peda] may recover only so many payments as are within two years of [March 28, 2001], the date the petition was filed." *Gabelmann*, 571 N.W.2d at 482. The affidavit of Ms. Linda L. Stephens states that Ms. Peda's last commission payment was for February 1998, and that she did not receive any commissions for the remainder of 1998. Def.s' App. at 48. Further, Peda received the final 1998 sales report on approximately February 25, 1999, which showed that Peda would not receive any additional commission payments based on her 1998 sales. Def.s' App. at 48. Finally, Ms. Stephen testifies that "territory sales managers who received commissions based on their final

---

7. In her deposition, Peda gave the example that if her sales increased from $100,000 to $101,000; that would be a 1% increase in sales entitling her to $250 in commission. Def.s' App. at 6.

sales reports received their pay on March 2, 1999 or March 4, 1999." Def.s' App. at 49. Plaintiff Peda does not dispute any of the facts contained in Ms. Stephen's sworn statement. Based on this information, the court finds that Peda's commission payments became due and payable at intervals between March 1, 1998 and March 4, 1999. Under section 614.1(8), Peda can recover only those payments "as are [due and payable] within two years from when the petition [was] filed." *Gabelmann*, 571 N.W.2d at 482. As all of the commissions payments became due and payable more than two years before Peda's petition was filed on March 28, 2001, her claim for commissions under the IWPCA is time barred. Likewise, as the savings statute, IOWA CODE § 614.10, cannot enlarge the statute of limitations as to the filing of the claim in the first instance, *see Berntsen*, 623 N.W.2d at 846, as to the IWPCA claim the plaintiff's motion for partial summary judgment is **denied** and the defendants' motion for summary judgment is **granted**.

### C. Preclusive Effect Of The Peda I Judgment

As *Peda I* was in front of this court under federal question jurisdiction, and the present action is in front of this count under diversity jurisdiction, a brief discussion of whether state or federal law controls the preclusive effect of the *Peda I* judgment is necessary. The Eighth Circuit Court of Appeals has held that a federal court should apply federal law to determine the preclusive effect of a prior federal judgment in a case based on federal question jurisdiction. *See Jaramillo v. Burkhart*, 999 F.2d 1241, 1245 (8th Cir. 1993) (declaring that even if the second suit is in federal court because of diversity, federal law still governs the issue of res judicata if in the prior action, the court rendered judgment on a claim arising under federal law); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1012 (8th Cir.1990); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir.1982). As the judgment sought to be given a preclusive effect was a judgment by a federal court, federal law would have governed this issue even if the present action was not removed from state court. *See Poe*, 695 F.2d at 1105. In this matter, federal res judicata principles apply because " 'it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.' " *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir.2002)(quoting *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir.1997)) (citations omitted).

Before diving into the substance of the parties' arguments, it is important to first embark on a brief review of the nomenclature most commonly used (and *mis* used) in discussing the preclusive effect of a prior court judgment. Collateral estoppel, or issue preclusion, is a doctrine that bars relitigation of an issue identical to the issue actually litigated in the previous action. *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 939 (8th Cir.2000). Res judicata, or claim preclusion, bars litigation of claims that were litigated, or could have been litigated, in the previous action. *Id.* at 940 n. 13. In this matter, the defendants allege that Peda's claim for wrongful termination is barred by principles of both res judicata and claim preclusion.

#### 1. Res judicata

Claim preclusion " 'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.' " *Plough v. West Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 517 (8th Cir.1995) (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir.1984)). The Eighth Circuit Court

of Appeals test for whether the doctrine of res judicata bars litigation of a claim requires an examination of whether (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties. *Canady,* 282 F.3d at 1014 (citing *Hillary,* 123 F.3d at 1044 n. 2, and *NAACP v. Metropolitan Council,* 125 F.3d 1171, 1174 (8th Cir. 1997)); *see also Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990); *Murphy v. Jones,* 877 F.2d 682, 684 (8th Cir.1989); *Headley v. Bacon,* 828 F.2d 1272, 1274 (8th Cir.1987). "If the three elements are met, the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Lundquist v. Rice Mem. Hosp.,* 238 F.3d 975, 977 (8th Cir.2001) (quoting *C.I.R. v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948)) (citation omitted); *see Armstrong v. Norwest Bank, Minneapolis, N.A.,* 964 F.2d 797, 802 (8th Cir.1992) ("where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim."). However, claim preclusion does not apply "to claims that did not exist when the first suit was filed." *Lundquist,* 238 F.3d at 977; *see Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.,* 228 F.3d 883, 886 (8th Cir.2000) ("[i]t is well settled that claim preclusion does not apply to claims that did not arise until after the first suit was filed."). The parties do not dispute the first and second elements, but rather center their arguments on whether the two actions involved the same cause of action and the same parties or their privies.

### a. *Same parties or their privies*

■ Both plaintiff and defendants concede that Plaintiff Peda and Defendant FDAH were parties in the first action, and are parties in the current action. The only difference in parties is the addition of Wyeth to the current action. At the time of *Peda I,* FDAH's parent company was American Home Products Corporation ("AHP"), and as such AHP was named in that action. In the interim between the court's resolution of *Peda I,* and the refiling of the case as it is before the court at this time, Wyeth replaced AHP as the parent company of FDAH. Plaintiff Peda argues that this destroys a finding of identity of the parties, as "Peda would not have had the opportunity to litigate her claims against Wyeth" in the first action. Plaintiff's Memorandum in support of Plaintiff's Motion for Partial Summary Judgment, Doc. No. 10–1, at pg. 14 ("Plf.'s Brief"). Defendants Wyeth and FDAH, in their resistance and cross-motion for summary judgment, do not address the issue of identity of the parties, but rather argue under the assumption that the identity of the parties requirement has been met.

■ The mere fact that Wyeth was not named as a party in the first action does not extinguish the applicability of the defense of claim preclusion to this matter, as claim preclusion extends both to parties and to "those who stand in privity with the [party] in the prior suit." *Headley v. Bacon,* 828 F.2d 1272, 1275 (8th Cir.1987). Where the relationship between the old and new defendants is so close that it "border[s] on near identity," the parties are in privity, and are considered identical for purposes of claim preclusion. *Headley,* 828 F.2d at 1276 (quoting *Robbins v. Dist. Ct. of Worth County,* 592 F.2d 1015, 1017 (8th Cir.1979), *cert. denied,* 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979)). On March 11, 2002, AHP changed its name to

Wyeth in order to "reflect[ ] the Company's evolution from a diversified holding company into a focused, global pharmaceutical company. Wyeth Company Website at *http://www.wyeth.com/about/period5.asp.* A mere name change, standing alone, does not destroy party identity. At the very least, Wyeth is in privity with AHP to·the extent required for a finding of identity of the parties. As Wyeth stands in the identical position as AHP did in the first action, Plaintiff Peda, in litigating her claims against AHP in *Peda I,* was afforded a "full and fair opportunity" to litigate any claims she would have against AHP and/or Wyeth. *Plough,* 70 F.3d at 517. Therefore, for purposes of claim preclusion Wyeth and AHP are identical parties, and thus the requirement of party identity is satisfied.

### b. Same cause of action

 Plaintiff Peda argues that as the facts she would need to show to support her claim for sexual discrimination under Title VII in the first action (status as a woman and discrimination based on that status), are wholly different than the facts necessary to support her wrongful

termination in violation of public policy claim [8] (terminated due to the fact she was a "whistleblower"), she could not have "fully and fairly adjudicated" her wrongful termination claim at the time of the first suit. Defendants argue that Peda had an opportunity to litigate her wrongful discharge claim at the time she filed the first action, that Peda testified as to her discussions with the Federal Trade Commission ("FTC") and the Federal Bureau of Investigation ("FBI") during her first deposition, that Peda was aware of the facts necessary to assert a wrongful discharge claim at the time of her first suit, and finally that "some of the same evidence necessary to prove the wrongful termination was alleged and used in the original action." [9] Def.s' Brief at pg. 10.

██ The Eighth Circuit has adopted the Restatement (Second) of Judgments in determining whether two claims arise from the same cause of action for res judicata purposes:

> " 'When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extin-

---

**8.** Iowa recognizes the tort of wrongful discharge in violation of public policy as an exception to the at-will employment doctrine. *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 282 (Iowa 1995). In order to establish wrongful termination in violation of public policy, plaintiff Peda would have to show the following factors: (1) engagement in a protected activity; (2) discharge; and (3) a causal connection between the conduct and the discharge. *Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 281 (Iowa 2000) (citing *Teachout v. Forest City Cmty. Sch. Dist.,* 584 N.W.2d 296, 299 (Iowa 1998)). The court must first determine whether a well-recognized and clear public policy is available to support the exception to the at-will doctrine. *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560 (Iowa 1988). If a clear, well-recognized public policy is found, next the employee must "show the dismissal for engaging in the

conduct jeopardizes or undermines the public policy." *Id.* at 283–284, 613 N.W.2d 275 (citing *Yockey v. State,* 540 N.W.2d 418 (Iowa 1995)). "If a public policy is threatened, but is not jeopardized by the discharge, the cause of action must fail." *Id.* at 284 (citing *French v. Foods, Inc.,* 495 N.W.2d 768, 771–72 (Iowa 1993)).

**9.** Defendants also state that in her first suit Peda alleged that FDAH retaliated against her for filing reports with the FTC and FBI. Def.s' Brief at pg. 10. The record, however, does not substantiate this statement. At no time in the original action did Peda state a claim for retaliation. *See* Second Amended and Substituted Complaint, Def.s' App. at 50. However, her complaint did discuss how the sexual harassment began after two FDAH employees discovered that she had filed reports with both the FTC and FBI. *Id.*

guished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Murphy v. Jones,* 877 F.2d 682, 684 (8th Cir.1989) (quoting *Poe v. John Deere,* 695 F.2d 1103, 1106 (8th Cir.1982) quoting in turn RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). Whether the claims arise from the same transaction, or series of transactions, is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Poe,* 695 F.2d at 1106 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)). "Put another way, whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy,* 877 F.2d at 684–85 (citations omitted).

In *Poe v. John Deere Company,* 695 F.2d 1103 (8th Cir.1982), the Eighth Circuit Court of Appeals addressed a situation strikingly similar to the one at hand in this matter. In *Poe,* the plaintiff brought her first suit in federal district court against John Deere Company ("John Deere") alleging racial discrimination and retaliation in violation of Title VII ("*Poe I*"). *Id.* at 1105. The jury in that matter found in favor of John Deere. *Id.* Poe then commenced another suit against John Deere in Missouri state court alleging "violation of the Missouri Service Letter Statute, invasion of privacy, injurious falsehood, and intentional infliction of emotional distress" ("*Poe II*"). *Id.* John Deere removed the case to federal district court on grounds of diversity jurisdiction. *Id.* The federal district court granted John Deere's motion for summary judgment on res judicata grounds. *Id.* The plaintiff appealed the grant of summary judgment to the Eighth Circuit Court of Appeals. *Id.* The Eighth Circuit Court of Appeals affirmed the grant of summary judgment, finding:

> *Poe I* and *Poe II* present the same claim. They emerge from the same transaction and share precisely the same nucleus of operative facts. The thrust of both cases is whether Ms. Poe was wrongfully discharged on April 21, 1977, or whether, as John Deere contends, she was terminated because of excessive and inexcusable absenteeism and because she made an unauthorized use of the company's name.... A court ruling bars relitigation of actions arising out of the same transaction or factual setting.

*Id.* at 1106–07. Further, the Eighth Circuit found that there was no reason why the service-letter and tort theories could not have been presented in the first action—as both theories were recognized months before the filing of Poe's first case, and all of the predicate events for bringing the new claims had already occurred. *Id.* at 1107. Ultimately, the Eighth Circuit affirmed the grant of summary judgment by the district court, stating: "The doctrine of res judicata is meant to preclude precisely the course of action which plaintiff pursued in *Poe I* and *II.*" *Id.* at 1108.

■ As in *Poe,* the facts and events necessary for the plaintiff to establish her wrongful termination claim occurred at the same time as the events surrounding Peda's Title VII claim in *Peda I.* There appears no palatable reason why the plaintiff could not have brought her wrongful termination claim at the same time as her Title VII claim, as her cause of action for wrongful termination clearly existed at the time the first suit was filed. *Lundquist,* 238 F.3d at 977. The plaintiff's complaint in *Peda I* discussed that her alleged harassment began after she filed com-

plaints regarding the defendants with the FBI and FTC. The facts surrounding both claims are related in "time, space [and] motivation" and "would form a convenient trial unit." *Poe*, 695 F.2d at 1106 (citing RESTATEMENT OF JUDGMENTS § 24(2) (1982)). Even if, as the plaintiff argues, the facts necessary to substantiate Peda's wrongful discharge claim are somewhat different than the those necessary to support a sexually hostile work environment claim, the wrongful discharge claim is based on the same nucleus of operative fact as Peda's sexual harassment claims pursued in *Peda I*. The wrong the plaintiff is asserting is the same—wrongful discharge—it appears that only the form of redress sought is different. In *Peda I* the plaintiff sought to redress the wrong via a Title VII claim, and here she seeks recovery under a state law tort claim. " '[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Hufsmith v. Weaver*, 817 F.2d 455, (8th Cir.1987) (quoting *Ruple v. City of Vermillion*, 714 F.2d 860, 861 (8th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)). "The doctrine of res judicata is meant to preclude precisely the course of action which plaintiff pursued in *Poe I* and *II.*" *Id.* at 1108. As the plaintiff's wrongful termination in violation of public policy claim is barred by the doctrine of res judicata defendants' Motion for Summary Judgment is **granted** and plaintiff's Motion for Partial Summary Judgment is **denied.**[10]

## III. CONCLUSION

As a matter of law, plaintiff Peda's Iowa Wage Compensation Payment Act claim is barred by the applicable two-year statute of limitations, and her common law claim of wrongful termination in violation of public policy is barred by principles of res judicata. Therefore, the plaintiff's motion for partial summary judgment is **denied** and the defendant's motion for summary judgment is **granted.** The trial in this matter set to begin on August 23, 2004, is cancelled.

**IT IS SO ORDERED.**

---

10. As the court has determined that the doctrine of res judicata precludes the plaintiff from bringing her common law claim of wrongful termination in violation of public policy, it is not necessary for the court to address the parties' arguments as to whether or not principles of issue preclusion would also prevent this common law claim.